```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MARIA MERCEDES o/b/o B.M.A.,            :

                Plaintiff,              :     OPINION AND ORDER
        -v.-
                                        :     18 Civ. 11440 (GWG)
COMMISSIONER OF SOCIAL SECURITY,
                                        :

                Defendant.              :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Maria Mercedes brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her daughter's claim for supplemental security income ("SSI") benefits under the Social Security Act (the "Act"). The Commissioner has moved for judgment on the pleadings and dismissal pursuant to Fed. R. Civ. P. 12(c).[1] For the reasons stated below, the Commissioner's motion for judgment on the pleadings is granted.

I. BACKGROUND

　　A. Procedural History

Maria Mercedes filed for disability benefits on behalf of her daughter B.M.A. on October 22, 2015. See Administrative Record, filed June 4, 2019 (Docket # 13) ("R.") at 60. Her application was denied on January 28, 2016. R. 68, 70. Mercedes filed a request for a hearing before an Administrative Law Judge ("ALJ") on February 4, 2016. R. at 77-79. A hearing was held on March 28, 2018. R. at 44-59. On April 26, 2018, the ALJ found that B.M.A. was not

---

[1] See Notice of Motion, filed Aug. 14, 2019 (Docket # 17) ("Mot."); Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings, filed Aug. 14,

disabled, R. at 14-41, and the Appeals Council denied Mercedes's request for review on November 28, 2018, R. at 1-8.  This action was filed on December 7, 2018.  See Complaint, filed Dec. 7, 2018 (Docket # 2).  The Commissioner filed her Motion for Judgement on the Pleadings on August 14, 2019.  Mercedes did not respond to the Commissioner's motion, other than to file a letter with the Court on November 5, 2019, that stated she was "ready" and did not "need more time."   Letter from Maria Mercedes, filed Nov. 5, 2019 (Docket # 24).

    B.  Mercedes's Testimony

At the hearing before the ALJ, Mercedes testified that she was the mother of B.M.A.  R. 48.  Mercedes, B.M.A., and B.M.A.'s five-year old sister all lived together.  Id.  B.M.A.'s father was in Santo Domingo, which is where Mercedes is originally from.  Id.  B.M.A. was having trouble listening and/or hearing her teacher at school.  Id.  Because of this, the school wanted the teacher to be fitted with a "special apparatus" that would allow B.M.A. to hear the teacher.  Id.  In the meantime, B.M.A. had been placed in a special class at school because of her hearing issues.  R. 49.  B.M.A. previously had two surgeries and was scheduled to have another surgery three weeks after the date of the ALJ hearing.  Id.  These surgeries were meant to address B.M.A.'s hearing loss and the fact that she retains liquid in her ears.  Id.  The upcoming surgery was to replace tubes in B.M.A.'s ears, which had been put in during a previous surgery but had subsequently became damaged.  Id.  Eventually B.M.A. would need additional ear surgeries beyond the already scheduled surgery.  Id.  B.M.A. wore hearing aids, and Mercedes sometimes had to rush to B.M.A.'s school to deliver replacement batteries for the hearing aids.  Id.  B.M.A.'s hearing issues were getting progressively worse.  Id.

Unrelated to the hearing issues, Mercedes also stated that B.M.A. placed paper in her

---

2019 (Docket # 18) ("Gov't Mem.").

shoes because she kept losing her balance but didn't want to wear special shoes.  Id.  Mercedes went with B.M.A. to the doctor three times in the week prior to the ALJ hearing because B.M.A. had a fever and pain in her ears, but the doctor found B.M.A. did not have an infection.  R. 50.  In Mercedes's view, B.M.A. was disabled because she had to turn the television volume up at home, and because her daughter could not hear the ALJ speak during the hearing even though they were in a small space.  R. 58.  Mercedes also stated she had to come close to B.M.A. to speak with her; otherwise, B.M.A. could not hear her.  Id.

    C.  Medical Expert's Testimony

Dr. Rothenberg, a pediatrician with "many years" of private practice experience, testified that he had reviewed the medical record in the case and had heard the testimony at the hearing, and that he did not need additional information to share his opinion on the case.  R. 51-52.

Dr. Rothenberg testified that B.M.A. had hearing loss as well as podiatry problems that "sounded like a variance of flat feet."  R. 52.  The first listing Dr. Rothenberg considered when evaluating B.M.A.'s impairments was Listing 102.10B, which is the listing for hearing loss in children 5 to 18 years old.  Id.  Dr. Rothenberg noted that B.M.A. would not meet that listing because the air-conduction criteria of that listing is 70 decibels or higher in the better ear but B.M.A. only had 45-55 decibels in her better right ear.  R. 53.  Dr. Rothenberg also noted B.M.A. would not meet that listing's second criteria of 40% word recognition because B.M.A. had 100% word recognition.  Id.  Dr. Rothenberg next discussed Listing 102.10A, which is the listing for hearing loss for children under five, because B.M.A. was under the age of five on January 1, 2012, the stated disability onset date.  R. 53-54.  That listing has an air-conduction

3

criteria of 50 decibels[2] in the better ear, which B.M.A. would satisfy.  R. 54.  However, because B.M.A. had 100% word recognition, Dr. Rothenberg found B.M.A. did not meet the listing.  Id.

Dr. Rothenberg next discussed the domains of functionality as set forth in the Social Security regulations.  Id.  With regard to domain one — acquiring and using information — Dr. Rothenberg found that B.M.A. had no limitation.  R. 55.  The ALJ asked Dr. Rothenberg if the finding of no limitation was correct even though B.M.A. was having trouble hearing and was required to attend a special class in school.  Id.  Dr. Rothenberg responded that there was no evidence B.M.A. was not doing well scholastically, and that a January 25, 2018, pediatric exam indicated that B.M.A.'s hearing was "grossly normal."  Id.  With regard to domain two — attending and completing tasks — Dr. Rothenberg found no limitations because the medical record contained no mention of a problem in that area.  Id.  Dr. Rothenberg similarly found no limitation with regard to domains three and four: interacting and relating with others, and moving about/manipulating objects, respectively.  Id.  Dr. Rothenberg initially said B.M.A. had no limitation with regard to domain five, caring for self.  Id.  However, the ALJ noted he was not sure he agreed with Dr. Rothenberg, because B.M.A. might have difficulty bathing and showering if she had tubes in her ears.  R. 55-56.  Dr. Rothenberg replied that children can still shower with modern ear tubes, but nonetheless stated B.M.A. actually had a less-than-marked limitation with regard to caring for herself.  R. 56.

With regard to the final domain, physical well-being, Dr. Rothenberg stated B.M.A. had a less-than-marked limitation.  Id.  In explaining his conclusion, Dr. Rothenberg noted that the

---

[2] Although the hearing transcript indicates Rothenberg stated the 102.10A criteria required a hearing threshold of "15" decibels or greater, the correct criteria is 50 decibels, and we assume the number "15" is a transcription error.

consultant pediatrician found B.M.A.'s hearing was "grossly normal." Id. Additionally, Dr. Rothenberg stated that a December 28, 2017, report by a consultant audiologist revealed that B.M.A. used hearing aids "with good results." Id. Dr. Rothenberg stated that having tubes, such as those B.M.A. had, was "not a very serious event in pediatric problems" and that B.M.A.'s primary problem was neural sensory hearing loss. R. 56-57. Lastly, Dr. Rothenberg noted that a consultant otologist stated B.M.A. had normal hearing at 25 decibels when she wore hearing aids. R. 57.

Dr. Rothenberg also considered B.M.A.'s flat feet issues in assessing her physical well-being. Id. Dr. Rothenberg stated the relevant listing would be 101.02, which defines major disfunction of a joint. Id. The primary criteria of that listing is the inability to ambulate effectively. Id. Dr. Rothenberg noted that B.M.A. could ambulate effectively because she could "walk at a reasonable pace to do age appropriate activity," "walk at a reasonable pace on rough or uneven surfaces," and "walk a few steps, like on a staircase at a reasonable pace, using a handrail." R. 57-58. Dr. Rothenberg concluded that B.M.A. had less than marked limitations with respect to her physical well-being as to her flat feet impairment. R. 58.

D. ALJ's Opinion

The ALJ found that B.M.A. was born February 4, 2009, and thus was a school-aged child at all times between October 22, 2015, when the disability benefits application was filed, and April 26, 2018, the date of the ALJ decision. R. 29. B.M.A. had not engaged in substantial gainful activity since the date of her application for benefits, and she had the following severe impairments: hearing loss and podiatry issues related to flat feet. Id. However, the ALJ found B.M.A. did not have an impairment or combination of impairments that met or medically exceeded one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1. Id. The

5

ALJ summarized the medical evidence he used in making his decision. R. 30-32. With respect to B.M.A.'s hearing condition, the ALJ noted that records from an April 4, 2012, audiological evaluation revealed that B.M.A. "had normal hearing at 250Hz, sloping to a mild sensorineural hearing loss, and then to a slight hearing loss bilaterally." R. 30. Bilateral hearing aids were recommended. Id. B.M.A. subsequently underwent adenotonsillectomy (removal of her adenoids and tonsils) and bilateral myringotomy (a surgical incision into her eardrum to remove pressure) with tubes on April 5, 2013, and a January 16, 2014, examination of B.M.A.'s ears showed the tubes were intact. R. 31. The ALJ noted that B.M.A. had subsequently been receiving care at New York-Presbyterian Hospital since January 2015. Id. On January 14, 2016, B.M.A. underwent a consultative ear examination with Dr. Bernard, who stated that the tubes had "fallen out of her ears" and she had recurrent middle ear effusions. Id. Audiometric testing showed a mixed moderate hearing loss, but Dr. Bernard stated the hearing would return to mild sensorineural hearing loss after the replacement of the tubes as well as hearing amplification. Id. On January 15, 2016, B.M.A. underwent bilateral myringotomy with tube placement because of continued chronic middle ear effusions (buildup of fluid in the space behind eardrum). Id. October 14, 2016, audiological evaluations showed mild-to-moderate mixed hearing loss on the left ear and mild-to-severe mixed hearing loss on the right ear. Id.

With respect to B.M.A.'s feet, the ALJ noted that an October 6, 2016, letter from Dr. Stuart Kitton, a podiatrist, explained that B.M.A. had flat feet at standing position, as well as early juvenile bunion and hammertoes. Id. B.M.A. was scheduled to undergo radiographs and potentially be prescribed functional orthotics in the future. Id. A January 26, 2018, consultative pediatric report showed that B.M.A. had a normal gait and could walk on her heels and toes

without difficulty.  Id.  That same report indicated B.M.A.'s motor skills were normal for her age.  Id.

Given this evidence, and the opinion of Dr. Rothenberg as stated during the ALJ hearing, the ALJ found that B.M.A.'s impairments could be expected to produce her alleged symptoms. R. 32.  However, the ALJ found that statements concerning the intensity and persistence of these symptoms, as well as their limiting effects, were not consistent with the medical evidence and other evidence in the record.  Id.  In reaching this conclusion, the ALJ gave great weight to the opinion of the medical expert.  Id.  The ALJ gave moderate weight to the opinions of the consultative examiners.  Id.  Little weight was given to the state agency consultant because he was a non-treating and non-examining source.  Id.

The ALJ made findings regarding the six domains of functionality.  R. 32-37.  The ALJ found B.M.A. had no limitation in acquiring and using information, basing his finding on the testimony of the medical expert as well as the November 20, 2015, function report, as filled out by Mercedes, which indicated B.M.A. had no limitations in her ability to learn.  R. 33.  The ALJ also found B.M.A. had no limitation in her ability to attend and complete tasks.  Id.  The ALJ stated his finding was consistent with the testimony of the medial expert as well as Mercedes's statement in the function report that B.M.A. began and completed her homework.  Id.  The ALJ also found B.M.A. had no limitation in interacting and relating to others, as indicated by the testimony of the medical expert and Mercedes's statement in the function report that B.M.A. had friends her own age and got along well with adults.  R. 34.  The ALJ found B.M.A. had no limitation in moving about and manipulating objects.  R. 35.  The ALJ based his findings on the January 26, 2018, consultative pediatric examination that showed B.M.A.'s gait was normal, as well as the testimony of the medical expert and the function report's indication that B.M.A.'s

physical abilities were not limited. Id. With respect to B.M.A.'s ability to care for herself, the ALJ determined B.M.A. had less than marked limitations. R. 36. Specifically, B.M.A. had tubes in her ears for effusions, and needed to avoid getting water in the tubes. Id. Lastly, with respect to the health and physical well-being domain, the ALJ found that B.M.A. had less than marked limitation. R. 37. The ALJ noted B.M.A. had some limitations because of her hearing loss as well as her podiatry flat feet issues. Id. Because B.M.A. did not have impairments that resulted in marked limitations in two domains of functioning or one extremely limited domain, the ALJ found her not to be disabled as that term is defined in the Social Security Act. Id.

    E. The Administrative Record

The Commissioner has provided a summary of the medical evidence contained in the administrative record. See Gov't Mem. at 2-11. Mercedes has not contested the Commissioner's summary of this evidence. Having examined the administrative record, the Court adopts the Commissioner's summary as accurate and complete for purposes of the issues raised in this suit.

II. APPLICABLE LAW

    A. Scope of Judicial Review Under 42 U.S.C. § 405(g)

It is not a reviewing court's function "to determine de novo whether [a claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (citation and internal quotation marks omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012). Rather, a court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d 370,

374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008); Matthews v. Leavitt, 452 F.3d 145, 152 n.9 (2d Cir. 2006); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). The "threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted). Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)). The Second Circuit has characterized the substantial evidence standard as "a very deferential standard of review — even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam). "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Id. (emphasis in original) (citations and internal quotation marks omitted). "The role of the reviewing court is therefore quite limited

9

and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (citation and internal quotation marks omitted).

  B. Legal Standard Governing Evaluation of Disability Claims for Children

  To qualify for SSI, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Social Security Regulations provide a three-step sequential analysis to determine whether a child is disabled and therefore eligible for SSI. 20 C.F.R. § 416.924(a)-(d); see Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004). First, the ALJ is to consider whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment(s) that is severe," which is defined as an impairment that causes "more than minimal functional limitations." Id. § 416.924(c). Finally, if the ALJ finds a severe impairment, he or she must then consider whether the impairment "medically" or "functionally" equals a disability listed in the regulatory "Listing of Impairments." Id. § 416.924(c), (d); see also id. at Part 404, Subpart P, App. 1.

  To demonstrate functional equivalence, the child must exhibit "marked" limitation in two of six functional domains described in the regulations, or "extreme" limitation in one of the domains. 20 C.F.R. § 416.926a(a); see Pollard, 377 F.3d at 190. The first five domains consider the child's ability to acquire and use information, attend and complete tasks, interact and relate with others, move about and manipulate objects, and care for himself. 20 C.F.R. § 416.926a(b)(1)(i)-(v). The sixth domain considers the child's health and physical well-being. Id. § 416.926a(b)(1)(vi).

A child has a "marked" limitation when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." Id. § 416.926a(e)(2)(i). "'Marked' limitation . . . means a limitation that is 'more than moderate' but 'less than extreme.'" Id. An "'extreme'" limitation exists when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." Id. § 416.926a(e)(3)(i).

III. DISCUSSION

At step one, the ALJ found that B.M.A. had not engaged in substantial gainful activity since the date her SSI benefits application was filed. R. 29. This finding is supported by substantial evidence, because there is no evidence in the record that B.M.A. has ever been employed. See R. 204 (work background report for B.M.A. with no previous employment listed).

At step two, the ALJ found that B.M.A. had two severe impairments: hearing loss and podiatry issues related to flat feet. R. 29. The ALJ found these impairments were severe because they caused more than minimal functional limitations. Id. This finding is also supported by substantial evidence because it is congruent with medical reports contained in the record. Specifically, on January 14, 2016, Dr. Bernard diagnosed B.M.A. as having mixed moderate hearing loss that would return to mild hearing loss after replacement of her ear tubes. R. 352-53. Additionally, an October 6, 2016, letter from Dr. Stuart Kitton, a podiatrist, explained that B.M.A. had flat feet at standing position, as well as early juvenile bunion and hammertoes. R. 365.

At step three, the ALJ found B.M.A. did not meet one of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 29. The ALJ considered Listings 101.02 and 102.10. Id. Listing 101.02 covers

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 101.00B2b

20 C.F.R. part 404, Subpart P, App. 1 § 101.02. The ALJ's finding that B.M.A. does not meet the requirements of Listing 101.02 is supported by substantial evidence, including Mercedes's statement in the function report that B.M.A.'s physical abilities are not limited, R. 157; the January 26, 2018, pediatric examination showing normal gait, R. 358-361; and the testimony of the medical expert, R. 57-58.

The ALJ next considered Listing 102.10, which covers hearing loss in individuals age 5 to 18 and is applicable where a claimant shows either:

> 1. An average air conduction hearing threshold of 70 decibels or greater in the better ear and an average bone conduction hearing threshold of 40 decibels or greater in the better ear (see 102.00B2f); or
>
> 2. A word recognition score of 40 percent or less in the better ear determined using a standardized list of phonetically balanced monosyllabic words (see 102.00B2f)
> . . . .

20 C.F.R. Part 404, Subpart P, App. 1 § 102.10. Here, B.M.A. showed an air conduction hearing threshold of 45-55 decibels in her better ear as well as a word recognition score of 100 percent during a December 28, 2017, consultative examination, meaning she fails to satisfy either criteria

of the listing. R. 53, 356. Thus, the ALJ's finding that B.M.A. did not meeting the Listing 102.10 criteria is supported by the medical record, see R. 356, as well as the testimony of the medical expert at the hearing, see R. 53.

Because the ALJ concluded B.M.A. did not meet any of the listings, he proceeded to determine whether B.M.A. nonetheless had an impairment or combination of impairments that "functionally" equaled the severity of the listings. R. 29. In undertaking this analysis, the ALJ assessed the functional limitations caused by B.M.A.'s impairments using the six domains described in the regulations promulgated under the Act. R. 32-37.

Substantial evidence supports the ALJ's determination that B.M.A. has no limitation in acquiring and using information. Under the relevant regulations, school-aged children's performance in this domain is assessed using the following criteria:

> When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iv). The ALJ based his determination on the function report filled out by Mercedes, which stated B.M.A.'s ability to progress in learning was not limited. See R. 156. The ALJ also based his finding on the medical expert's testimony that there was no evidence B.M.A. was not doing well scholastically, even though she had to attend a special class because of her hearing issues. See R. 55. Indeed, Mercedes specifically reported that B.M.A. was "doing well in school" during an October 14, 2016, examination. R. 369. Though Mercedes

did note B.M.A. was "having problems listening [and] hearing the teacher at school," R. 48, Mercedes also stated that B.M.A. was being placed in a special class with a teacher that would be equipped with a microphone that enabled B.M.A. to "understand what's going on in class," R. 48-49. Given the lack of any indication of poor scholastic performance by B.M.A. as a result of her hearing problems, the ALJ could properly conclude that B.M.A.'s hearing issues did not interfere "seriously with [the child's] ability to independently initiate, sustain, or complete activities" related to acquiring and using information. 20 C.F.R. § 416.926a(e)(2)(i); see also Amanda L. v. Saul, 2019 WL 5865388, at *9 (N.D.N.Y. Nov. 8, 2019) (ALJ may properly discount claimant's "statements concerning the intensity, persistence and limiting effects of" symptoms where claimant's "activities of daily living are not consistent with her significant allegations."); Morgan v. Barnhart, 2005 WL 2978976, at *3 (S.D.N.Y. Nov. 7, 2005) (less than marked limitation found where claimant's "academic skills appear to be within normal range" even though claimant was in "special education class"), adopted by 2007 WL 2609897 (S.D.N.Y. Sept. 5, 2007). Thus, because there is minimal evidence of any limitation in this domain, the ALJ properly found that B.M.A. had no limitation with respect to acquiring and using information.

Substantial evidence also supports the ALJ's determination that B.M.A. has no limitation in attending and completing tasks. Under the relevant regulations, school-aged children's performance in this domain is assessed using the following criteria:

> When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate.

> You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores.  You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv).  Here, the ALJ relied on the opinion of the medical expert, see R. 55, who noted no problems in this domain, as well as Mercedes's statement that B.M.A. "[c]ompletes homework," "[c]ompletes chores most of the time," and "[k]eeps busy on his/her own," see R. 160.  During a January 26, 2018, examination by Dr. Bard, it was also noted that B.M.A. "does her homework."  R. 358.  Given this record, the ALJ could properly determine that B.M.A. had no limitation in attending and completing tasks.  See Arias ex rel. Almonte v. Comm'r of Soc. Sec., 2010 WL 4724263, at *5 (E.D.N.Y. Nov. 15, 2010) (less than marked limitation finding supported by substantial evidence where plaintiff testified that claimant did his homework).

Substantial evidence supports the ALJ's determination that B.M.A. has no limitation in interacting and relating with others.  Under the relevant regulations, school-aged children's performance in this domain is assessed using the following criteria:

> When you enter school, you should be able to develop more lasting friendships with children who are your age.  You should begin to understand how to work in groups to create projects and solve problems.  You should have an increasing ability to understand another's point of view and to tolerate differences.  You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

20 C.F.R. § 416.926a(i)(2)(iv). The ALJ concluded B.M.A. had no limitation in this domain after considering the testimony of the medical expert, see R. 55, as well as Mercedes's statement that B.M.A. gets along with teachers and other adults, plays team sports, has friends, and can make new friends, see R. 158.  Testimony that the claimant has no issues getting along with adults and has friends strongly supports a finding that she has no limitation with respect to this

15

domain.  See Torres v. Comm'r of Soc. Sec., 2010 WL 2674543, at *8 (E.D.N.Y. June 30, 2010) (substantial evidence supported Commissioner's finding that claimant had no limitation in interacting and relating with others where "[h]is mother testified that he gets along with others").

Substantial evidence supports the ALJ's determination that B.M.A. has no limitation in moving about and manipulating objects.  Under the relevant regulations, the performance of school-aged children in this domain is assessed using the following criteria:

> As a school-age child, your developing gross motor skills should let you move at an efficient pace about your school, home, and neighborhood.  Your increasing strength and coordination should expand your ability to enjoy a variety of physical activities, such as running and jumping, and throwing, kicking, catching and hitting balls in informal play or organized sports.  Your developing fine motor skills should enable you to do things like use many kitchen and household tools independently, use scissors, and write.

20 C.F.R. § 416.926a(j)(2)(iv).  Here, the ALJ noted that Mercedes stated on the function report that B.M.A.'s physical abilities were not limited by her impairments.  See R. 157.  The ALJ also considered the opinion of Dr. Bard, who stated that B.M.A.'s impairment would not affect her physical activities.  See R. 360.  However, Dr. Bard's opinion was properly given only moderate weight because it was a one-time examination.  R. 32; see also Gilliam v. Comm'r of Soc. Sec., 2018 WL 9837921, at *11 (S.D.N.Y. Sept. 5, 2018) ("ALJ was within his discretion to assign . . . opinion 'moderate weight,'" when consultative examiner only saw claimant once), adopted by 2019 WL 5188946 (S.D.N.Y. Oct. 15, 2019).  The ALJ also considered the opinion of the medical expert who discussed B.M.A.'s podiatry impairment in his determination that she did not meet the criteria of Listing 101.02.  See R. 57-58.  Specifically, the medical expert testified that "there's no evidence that this child does not walk effectively."  R. 57.  Because there is no indication in the record that B.M.A. had any impairment to completing the activities

described in 20 C.F.R. § 416.926a(j)(2)(iv), the ALJ's determination with respect to this domain is supported by substantial evidence.

Substantial evidence supports the ALJ's determination that B.M.A. has less than marked limitations in the domain of caring for herself.  Under the relevant regulations, school-aged children's performance in this domain is assessed using the following criteria

> You should be independent in most day-to-day activities (e.g., dressing yourself, bathing yourself), although you may still need to be reminded sometimes to do these routinely.  You should begin to recognize that you are competent in doing some activities and that you have difficulty with others. You should be able to identify those circumstances when you feel good about yourself and when you feel bad.  You should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior.  You should begin to demonstrate consistent control over your behavior, and you should be able to avoid behaviors that are unsafe or otherwise not good for you.  You should begin to imitate more of the behavior of adults you know.

20 C.F.R. § 416.926a(k)(2)(iv).  Here, the ALJ found, based on the medical expert's testimony, that B.M.A. might have difficulty caring for her ears or bathing because of the tubes that were placed inside of them.  See R. 55-56.  Although the ALJ found less than marked limitations in this domain, the function report filled out by Mercedes indicated that B.M.A.'s impairment did not impact her ability "to help . . . herself and cooperate with others in taking care of personal needs."  R. 159.  Thus, we cannot conclude that the possibility that B.M.A. might have difficulty bathing because of her tubes is a marked limitation, such that it "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i); see also Marshall o/b/o "A.M.H." v. Berryhill, 2018 WL 3215648, at *7 (W.D.N.Y. Apr. 3, 2018) ("opinions . . . indicative that Plaintiff has some limitations as defined by § 416.926a(e)(2)(i) do not . . . support that Plaintiff has a sufficient 'marked' limitation within

the strict requirement of § 416.926a(e)(2)(i)"), adopted by 2018 WL 3209191 (W.D.N.Y. June 29, 2018).

Substantial evidence supports the ALJ's determination that B.M.A. has less than marked limitations in the domain of health and physical well-being.  "In this domain, we consider the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on [the claimant's] functioning that we did not consider in" the moving about and manipulating objects domain.  20 C.F.R. § 416.926a(l).  The ALJ should consider, among other things, the claimant's "generalized symptoms," whether the claimant is "medically fragile," and whether the claimant has "limitations in [their] physical functioning because of [their] treatment."  Id. § 416.926a(l)(4).  The ALJ noted B.M.A. had some limitations in her health and physical well-being, citing to the examination notes of Dr. Bernard, see R. 352-54, as well as Dr. Kitton, see R. 364-382.  The ALJ also found these examination notes were consistent with the testimony of the medical expert.  See R. 56-58.  In supporting his testimony, R. 56, the medical expert referenced the December 28, 2017, report of Dr. Cheng, who found that B.M.A. was using hearing aids with good results, see R. 355-57.  The medical expert also noted, R. 57, that a consultant otologist tested B.M.A.'s hearing with aides in place on January 15, 2016, and found that it was within normal range, see R. 352-53.  Lastly, with respect to B.M.A.'s podiatric issues, the medical expert opined that there was no indication B.M.A. met the requirements of Listing 101.02, the listing for major dysfunction of a joint, which requires that the claimant be unable to ambulate correctly.  R. 57-58.  The testimony of the medical expert, when considered in combination with the record, constitutes substantial evidence with respect to the ALJ's finding on this domain.  See Allen v. Comm'r of Soc. Sec., 351 F. Supp. 3d 327, 335 (W.D.N.Y. 2018) ("[A]n ALJ may assign greater weight to the opinion of a non-examining source when it is better

supported by the record."); Ellett v. Comm'r of Soc. Sec., 2011 WL 1204921, at *9 (N.D.N.Y. Mar. 29, 2011) ("Although [t]he Social Security Regulations do not contemplate that the opinions of a non-examining physician be treated as substantial evidence, these opinions may constitute substantial evidence where they are in turn supported by substantial evidence in the record.") (citations and internal quotation marks omitted); Leach ex rel. Murray v. Barnhart, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) (noting that "State agency physicians [that did not examine the claimant] are qualified as experts in the evaluation of medical issues in disability claims. As such their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

IV.  CONCLUSION

Because the ALJ's determination is supported by substantial evidence, the ALJ's decision must be upheld. Accordingly, the Commissioner's motion for judgment on the pleadings (Docket # 17) is granted. The Clerk of Court is instructed to mail a copy of this Opinion & Order to Maria Mercedes at the address on the docket.

Dated: August 17, 2020
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge